Thank you, your honor. Good afternoon and may it please the court, Nicholas Jimenez for the appellant, Ricardo Renteria. There are three reasons why the court should reverse Mr. Renteria's convictions in this case. First, the district court erred in denying Mr. Renteria's motion to suppress evidence. The district court found that the officers had reasonable suspicion to believe that Mr. Renteria committed a violation of California vehicle code 22107, which is the turn signaling statute. The district court's sole finding on this issue was, was that the officers were driving behind Mr. Renteria when he allegedly made a turn into an alley. That finding was legally insufficient to support a violation of the statute. The statute itself and all relevant cases cited in the require a showing that there was at least actual or potential impact on another car, including the officer's car, admittedly, for the violation to lie. Now here, there was no such evidence presented. The government presented no evidence that the turn had any impact whatsoever of any kind on the officer's car. And there were no other cars on the road as the officers themselves conceded. Now, if the court looks to the California authorities, which are in the briefing, every single one of these cases says that there must have been at least some impact, whether it's on the speed of the officer's car, whether it's because of the distance between the two vehicles, whether it's because the police officer was stopped and could have potentially kept going, but could not because of the turn. Every single one of those cases says that there must have been at least the possibility of of an impact. And why doesn't that I why doesn't that argument go to whether he actually could have been convicted of of a violation? I mean, reasonable suspicion, you know, or the reasonable probability to give them the opportunity to stop him. That seems to be a lower standard. I mean, I mean, you're saying that because the officers didn't say that to the district court, that therefore the whole thing was precluded. But but that doesn't go to the fact of they may have had that in their head at the time they stopped him. I think the court's point, I think the issue, Your Honor, is the government bears the burden of showing that reasonable suspicion was proper, that that there was some reasonable suspicion in this case. I don't think there's any authority that says that a conclusory statement such as we were driving behind him, which is what we have in this case, that is literally all that that the record shows. We were driving behind. It doesn't say anything else. I don't think any authority stands for the proposition that that's enough to support a minimum of reasonable suspicion, which is all that the government had to do in this case. They that the Logsdon case. I yes. If the court looks to Logsdon, the testimony in that case specifically says that the testimony that the trial court heard and that the appellate court found credible in taking into account the due deference was that the officers were in the same lane as the defendant. Can you claim without a signal to the sole officers driving 100 feet from behind was enough? That's right. And and if if we had any facts like that in this case, then Mr. Renneria would have a tougher argument. But but there were no such facts. There are there's nothing in the record that can even allow the court to conclude that that was the case here. The officers could have been a mile away and seen them. And well, hold on a second. I'm not sure that's a fair statement. I mean, at the end of the day, the officers did say he didn't turn on his turn signal. Now, I I don't know how far away from a car you need to be to determine whether the turn signal has been turned on or not. But certainly you wouldn't be able to note that from a mile away. So so I I mean, that's where I just I think it's an interesting argument. I just don't know how that gets you into reasonable suspicion. If we're if he was charged and we were reviewing of whether he actually should have been convicted on a left turn, you know, on not putting on his signal. It's an interesting argument. But I think for reasonable suspicion, it's harder. I I'll only say before I move on to my next point, that at the end of the day, this court has to make sure that the district court relied on proper factual findings when it made the findings that it did in this case. And I think that's the issue that that we're facing here. I think the I think if the court looks at the court's briefing, the court basically said, well, I I read these cases and these cases say that if you're behind that, then we're good to go. And and I just don't think any of the authorities support that in this case. Council Judge Gould, if I could answer. Yes, your question before we get off the traffic stop issue. The question I have is, what, if anything, is the U.S. Supreme Court said in its cases about when a traffic stop? Amounts to reasonable suspicion to stop someone. And in terms of the standard that that the officers would need to stop someone. What is the U.S. Supreme Court? Did they weighed in on this issue? Well, your honor, I think the standard is is is the classic standard where it it's a very minimum. It's a very minimum showing that to show that certain facts can provide reasonable suspicion for a traffic stop. The officer just needs some article articulable facts, some some particular particularized and articulable facts, which which is kind of the point I've been trying to make to Judge Nelson is we don't have that here. We just don't know anything. And I think that's part because everybody focused on kind of what happened after that point, which are more interesting questions in terms of whether or not it happened or not. But but but at the end of the day, the I believe the Supreme Court has said that you need at a minimum some some particularized facts that are reasonable. Supposedly, I didn't see him signal. He didn't signal. Is that enough? Not under California vehicle code twenty two one oh seven, because not signaling is not enough. It's built into the statute. Is it enough under the Supreme Court standard under the Terry case for what's reasonable suspicion? I don't believe that it is, your honor. I think at the end of the day, the court, the the officers still need still need to have in their mind that there was a violation of the statute. There is no violation of the statute. If if the elements are not met, at least on at least some fact to each element, which we simply didn't have here. Like Judge Kelly said, we had a right hand turn. That that's it. And so I think on the remaining authorities, the California authorities, they wouldn't support that. I'll move on quickly. Thank you. I see my time is running out. I'll move on quickly to the. Well, since we we took up a lot of your time on the traffic stop issue, and I want to make sure you feel you have time to cover both consent and the argument about dismissing the indictment and so on. Well, thank you for all your argument. I'll try to be as brief as possible on the consent issue. I would only tell the court to to review the six the first five to six minutes of the body camera footage. I think that tells the story far better than I try to convey in the briefing or or that I could convey an argument. I think if the court looks at those six minutes, I think the court is going to see that it is going to find contrary to what the district court found here, which is that there was no the consent was completely knowing involuntary. I think the court looks at the video. The court is going to see that Mr. Renneria's demeanor was was far different than what was portrayed by the district court, meaning even from the get go, as soon as he was placed in handcuffs, one of the officers is already searching the car. And at that point, no consent had really been given. Basically, the officer says, I'm going to go over here and look for some papers. And he goes over there and he's searching inside the inside the front cabin and finds nothing. And he's and he's shouting some strange things, some questionable things about. You said you had a gun. Like I said, I think the court should look at those first six minutes of the video, because I know it's a long video, but you only get to look at the first six. Sorry, your honor, go ahead, please. Very long video. Yes, it's about an hour and a half. But the court only needs to see the first six minutes and the court will find that the totality of the circumstances show that at the point that consent was allegedly given, Mr. Renneria was trying to even talk to the officer and say, hey, wait a minute. And the officer was already gone and off to the races. And that coupled with the fact that he he was in handcuffs the whole time, even after the officers realized that he didn't have a warrant out for his arrest. They still left him in handcuffs. And the fact that he wasn't given his Miranda warnings or told that he could refuse consent, we think that weighs in favor of a finding of involuntary. And finally, I'll say a little bit about the whole destruction of the car. I think if the court looks to our reply brief, if if the court sees the timeline of events, I think we we feel that that supports a finding of bad faith in this case. It's not as easy to say, well, look, the government let the car go. And the the the the car company just destroyed it. They try to warn him. What the court has to focus on is what the government knew at the time that they released this car. And if the court sees it's a very compact timeline in terms of that, not that much time went by between when this stop happened and when Mr. Renneria was ultimately indicted. It was only a few weeks. And so at the end of the day, the government says, well, look, we can't hold the car forever and we can't be held to that. Really, the government knew right off the bat that the car was going to be a major issue in this case, which kind of dovetails into the third point in our briefing, which is Mr. Renneria wasn't able to mount any significant defense because the investigating officer basically said, look, I try to remove this panel. It was very easy to do. And there was really no way to rebut that because the car had been destroyed. So and I think the government could and should have known that and could have anticipate that anticipated that from the very beginning when Mr. Renneria was telling the officers, I don't know anything about any gun. Somebody else used my car. I think at that point, the burden was on the government to preserve the evidence, and it didn't happen. So thank you for the court's indulgence. I've gone way over. It's OK, we took you over with questions. Well, I'm going to give you like an extra minute, but let's say two minutes for a bottle to make sure we keep the government's counsel on her finest here. So the government, the belly is pronounced. Please proceed to argue for a pally. And we will give Mr. Menace two minutes to make rebuttal thereafter. Thank you, Your Honor. May it please the court. Jehan Pernas, on behalf of the United States. I'd like to start with the reasonable suspicion issue with the court's permission with respect to reasonable suspicion, the clearest path to affirmance. It's to give due deference to the district court's finding that the defendant's unsignaled turn may have affected the patrol car driving behind him. While there was no finding of the exact distance between the patrol car and the defendant's car, that is not necessary under the law. The officer also did testify at trial, but there was only 50 feet between the Tahoe and the patrol car right before the Tahoe turned into the alley. But I submit that the record before the district court was sufficient that the court could have inferred that the patrol car and the Tahoe were close enough that the patrol car was affected by was may have been affected by the defendant's right hand turn into the alley. The evidence in the record is that first officer Mahia testified in his declaration stated in his declaration and testified that he was driving up behind defendant second and that there were no other cars between them. There were no other cars on Bixel at that time. Second, even though it was dusk and even though the defendant had tinted windows, the defendant still saw that the patrol car was driving up behind him. And that's why the defendant attempted to flee, leaving treadmarks scorched in two separate locations. And finally, I would submit to the court that the only reason that the officers were actually able to catch sight of the defendant and they were able to follow him, despite the fact that he was speeding and doing his best to evade them, is because that the officers were already close enough to the Tahoe to begin with. On this record, there is no clear error on the district court's finding that there was reasonable suspicion for the traffic stop and the defendant's unsignaled turn may have affected the patrol car driving behind him. With respect to unless the court has any questions for me with respect to reasonable suspicion, I will move ahead to the consent to search issue. There is no clear error in the district court's ruling that the defendant voluntarily consented to the search of the Tahoe. The district court found that the defendant voluntarily consented to the search. And although he was in handcuffs and Miranda warnings had not been provided, consent was voluntary considering the totality of the circumstances, in particular, the nature of the interactions between the defendant and Officer Reynoso. And I would urge the court not to just watch the first six minutes of the video. The defendant was not actually handcuffed in the first six minutes of the video. I would urge the court to watch the first at least the first 20 minutes of the video, including from minute 10 to about minute 18 or so, where the defendant was talking to Officer Reynoso. He was engaging in a casual and relaxed conversation with Officer Reynoso. They were discussing Officer Reynoso on multiple occasions, expressed admiration for the defendant's car. They were discussing the neighborhood and how the neighborhood had been in the past. The defendant felt comfortable enough that he told Officer Reynoso that he'd been shot multiple times, that he'd left his gang life behind. And he even at one point solicited Officer Reynoso's advice for a car accident that he'd been in. On this basis, and taking into account, again, the totality of the circumstances, there was no clear error in a district court's ruling that the defendant voluntarily consented to the search of his Tahoe. And unless the court has any questions, I'll move to the destruction of evidence point. The district court's finding that the government did not act in bad faith when it permitted repossession of defendant's car is reviewable only for clear error. There was no clear, there was no error in this ruling at all, much less clear error. The apparent exculpatory value of the car was not evident to the government. The government did not act in bad faith. At worst, it was negligence. And the district court's ruling should be... Wait, I wanted to just ask one question on that. It does seem like there is an inherent need for the car to show where the gun was found. I mean, one of the arguments here is how accessible was it? And so why wouldn't that have been enough for the government to know that they needed to preserve the car? Your Honor, the court found that there were... But second, the court noted that the government had thoroughly searched and examined the car, had taken photos, had processed the car for evidence and made sure that it could be released. There was testimony from Officer Jenkins that it was easy for him to lift the concealed, the window control panel. And there's the burden on the defendant, too, at some point to prove that had they had an opportunity to actually examine the compartment, that there would have been some sort of... They would have been able to make some sort of hay out of this examination. And the defendant simply has not met this burden. The defendant was driving in a car with 14 foil-wrapped pound packages of methamphetamine rattling around in the backseat behind him. Flush at his side was a fully loaded .38 revolver. And on his person and in the center console was approximately $1,800 worth of cash. Considering the evidence... I'm sorry, Your Honor. Did the defendant receive an inventory of the search? And when did that occur? An inventory list was provided to the defendant.  Was it less than or more than five months from the time of his arrest? I believe it was less than five months from the time of his arrest. But I do not have that evidence. I don't have that record with me right now, Your Honor. When did the defendant first inquire about his car? It was in August, over six months after the defendant had already been indicted. Unless the court has any further questions, I would submit on our briefing. Okay. Thank you, counsel. I have no questions. Judge Kelly, Judge Nelson. Thank you. Hearing none, we thank you for your argument. We'll return to appellant to get a rebuttal argument. Thank you, Your Honor. Only briefly. The government says that the government wasn't on notice. It's been Mr. Ranerea's position that the government was on notice from the very first day. Because if the court watches the full hour of the video, the court will see that even at the time of arrest, Mr. Ranerea is denying knowledge about the gun, saying that somebody else was going to use the car, and this information was enough for the government to indict Mr. Ranerea. And then at that point, the car hadn't been destroyed. So the government had already done what it would do, go to the grand jury, use all this information to bring criminal charges, including the possession of the gun. And then at that point, the car had not been destroyed. And so at the very least, the government knew then, at the time of indictment and whenever it went to the grand jury, that it was going to bring these cases. And obviously, the government says, well, Mr. Ranerea hasn't pointed to any, what he would have done with the compartment. The problem was, like Judge Nelson said, the statute requires a showing that it was easily accessible. There's really no way to say, to rebut the government's witness saying it was easily accessible. Because there was no way for Mr. Ranerea to do that, because he didn't have a chance to do his own examination. And so... Counselor, if the car was there, what could he have done other than to say, I couldn't get it really quickly? I mean, why couldn't he have made that argument? Why didn't the defense make that argument? Well, in terms of Mr. Ranerea himself couldn't have said that because his position was, I didn't know anything was in there. I didn't know it was even a compartment. And so he really would not have tried to lift that piece. Now, he could have hired his own expert to say, I tried to pry that loose and it didn't really work. It wasn't as easy. Or he could have tried to say, look, the gun was placed in there in a way that we couldn't have been able to remove it. At least somebody from his side could have tried to present some conflicting evidence to what the government did, which if the court looks at the transcript of the trial, defense counsel basically try to get the government officer to say, now, it wasn't very accessible and that didn't really pan out. So anyway, I'm over my time. I'm not hearing you. Who was the owner of the car? The owner of the car was Mr. Ranerea, the appellant. So if he's the owner of the car. It was a lease. It's his position that it's his leased car, but he doesn't know that there's a secret compartment with the gun in it. Well, I mean, he told officers at the scene that he had lent the car to somebody else and so that was what he told the officers. I see. Thank you. Thank you, Ron. Okay. Well, I think we've probably exhausted the argument, but not the counsel. We appreciate the fine arguments of appellant and appellee. And this Ranerea case shall now be submitted. And both of you have the panel's deep thanks for appearing during a pandemic and braving the hazards of remote argument. So I'm sure it'll be good practice for you for the next pandemic. Okay. Okay. Thank you. This case shall be submitted.
judges: Kelly, Gould, Nelson